**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacquelin Kay Robinson,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-18-8345-PCT-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Jacquelin Kay Robinson's Application for Supplemental Security Income Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 11, Pl. Br.), Defendant Social Security Administration Commissioner's Opposition (Doc. 14, Def. Br.), and Plaintiff's Reply (Doc. 15, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10, R.) and now reverses the Administrative Law Judge's decision (R. at 20–28) as upheld by the Appeals Council (R. at 1–3).

## I.  BACKGROUND

Plaintiff filed an application for Supplemental Security Income Benefits on August 20, 2014, for a period of disability beginning May 15, 2014. (R. at 20.) Her claim was denied initially on January 27, 2015, and on reconsideration on July 15, 2015. (R. at

20.) Plaintiff then testified at a video hearing held before an Administrative Law Judge ("ALJ") on May 18, 2017. (R. at 38–58.) On October 16, 2017, the ALJ denied Plaintiff's Application. (R. at 28.) The Appeals Council denied a request for review of the ALJ's decision on November 5, 2018. (R. at 1–3.) On December 5, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff had the following medically determinable impairments: type 2 diabetes mellitus, diabetic neuropathy, and unspecified depressive disorder. (R. at 22.) Ultimately, however, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities." (R. at 22.) Thus, Plaintiff's impairments were not considered "severe" within the meaning of the Act and accompanying regulations. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(c). The ALJ further concluded that Plaintiff's limitations would not prevent her from performing past relevant work as a caregiver, cashier, or rehabilitation aid. (R. at 28.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more

than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ assigned improper weight to her treating physician assistant's opinion and consequently erred in finding Plaintiff's impairment non-severe; and (2) the ALJ erred in rejecting Plaintiff's testimony. (Pl. Br. at 1.)

### A. Substantial evidence does not support the ALJ's determination of non-severity.

The ALJ's inquiry ended at step two of the five-step analysis with a finding that Plaintiff's medical impairments were not severe. Plaintiff argues that the medical evidence consistently demonstrates the severity of Plaintiff's uncontrolled diabetes and diabetic neuropathy, and that the ALJ failed to adequately explain his finding of non-severity. (Pl. Br. at 5–6.) Relatedly, Plaintiff argues that the ALJ failed to provide germane reasons for rejecting treating physician assistant Josh Motl's assessment of Plaintiff. (Pl. Br. at 6.) Relying on the assessments of examining and non-examining doctors, Defendant responds that substantial evidence supports the ALJ's finding of non-severity. (Def. Br. at 5–9.)

The Ninth Circuit Court of Appeals interprets the severity requirement as a "*de minimis* screening device" designed to weed out groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1273 (citing 20 C.F.R. § 404.1520(b) (2014)). Only if the evidence establishes a "slight abnormality that has no more than a minimal effect on an individual's ability to work" should the ALJ end the inquiry at step two. Soc. Sec. Ruling 85-28; *Smolen*, 80 F.3d at 1290. An ALJ's decision to do so shall be affirmed only where it is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

In evaluating the severity of Plaintiff's impairment, the ALJ primarily considered medical records and opinions from Plaintiff's treating physician assistant, Josh Motl, and the state agency's examining physician, Dr. Tamara Kermani. He also briefly referred to medical records of various treating providers at the Family Medical Walk In clinics in Prescott Valley and Dewey, Arizona, and the opinions of the state agency's non-examining physicians, Drs. Michael Keer and Mikhail Bargan.

As summarized by the ALJ, Motl reported that Plaintiff "could occasionally lift up to ten pounds; could sit for fifteen minutes at a time, for a total of less than two hours in an eight-hour workday; could stand for fifteen minutes at one time, for a total of less than two hours standing and/or walking in an eight-hour workday; would need to take thirty minute unscheduled break every ten minutes; [and] would need to elevate her legs to four feet seventy percent of the workday." (R. at 26.) Motl also noted that Plaintiff "could perform gross manipulation and fine manipulation eighty percent of the time and reach overhead sixty percent of the time with her bilateral upper extremities." (R. at 26, 505.) Finally, Motl opined that Plaintiff's pain was frequently severe enough that she would miss more than four days of work per month. (R. at 26, 504.)

The ALJ assigned little weight to Motl's opinion. The regulations classify a physician assistant as an "other medical source." 20 C.F.R. § 404.1513(d)(2014). While this entitles their opinions to less deference than a treating physician's, the ALJ must articulate germane reasons for rejecting or discounting their opinions. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Here, the entire discounting of Motl's opinion comprises two sentences: "The undersigned gives little weight to this opinion. As discussed above, objective examinations were essentially normal with the exception of slightly decreased sensation in her lower extremities, but her providers noted normal gait and station." (R. at 26.) Thus, it appears that the ALJ's discounting of Motl's opinion is based on the premise that it is inconsistent with the examinations of Dr. Kermani and Plaintiff's other treating providers. The ALJ also insinuated that Motl's opinion contained internal inconsistencies. Neither implication is substantially supported by the record.

With respect to Motl's own consistency, most of his observations and opinions center on Plaintiff's inability to either sit or stand for longer than thirty minutes at a time and her need to frequently elevate her feet. He documented decreased sensitivity and "burning" in her feet and constant pain. "Standing, sitting too long, and walking make worse" the pain and burning sensation. (R. at 502.) None of this is inconsistent with Motl's estimation that Plaintiff could perform gross manipulation, fine manipulation, or reach

overhead. The record shows that Plaintiff's neuropathy and pain are in her feet. Manipulation and reaching overhead directly refer to functions of her hands and upper body. (R. at 505.)

Nor are Motl's observations and opinion necessarily inconsistent with Dr. Kermani's. Dr. Kermani noted that Plaintiff could walk, get up onto the examination table, sit without discomfort, and transition from sitting to standing (and vice versa) without difficulty. However, both the January 2015 and May 2015 exams lasted only thirty minutes each, including the paperwork portion. Plaintiff has consistently reported that sitting and standing for *more than* thirty minutes at one time causes her significant pain. (R. at 49, 182, 213.) Motl's assessment reflects that. That Plaintiff did not display signs of distress and discomfort during a *brief* examination with Dr. Kermani—during which Plaintiff sat, stood, and walked, and therefore was not confined to any one position for thirty minutes—does not contradict evidence of pain, burning, and the need to elevate her feet following *extended* bouts in each position. Nor does it sufficiently support the conclusion that Plaintiff could work an eight-hour day without significant limitation.

Other objective evidence in the record supports Motl's findings. While Dr. Kermani's January evaluation noted that "claimant denies abnormal sensation to light touch, vibration, or pain in the lumbar plexus nerves" (R. at 353), the May evaluation found that Plaintiff did exhibit sensitivity to light touch and pain in those nerves. (R. at 407.) Plaintiff's records from frequent visits to the Family Medical Walk In clinic demonstrate this, too. Her April, May, July, and October 2014 physical exams all revealed hyperesthesia, "hypersensitivity in bilateral feet with palpation," and "sensitiv[ity] to light touch [in] lower extremities." (R. at 323, 326, 332, 337, 339.) Her January, February, March, May, June, November, and December 2015 physical exams revealed the same, as did her January, February, March, May, and June 2016 physicals. (R. at 412, 418, 424, 428, 445, 449, 453, 457, 461, 478, 485.) Plaintiff's prescribed doses of medications to manage her diabetes and neuropathic pain have also steadily increased over the years.

In light of the foregoing evidence, the ALJ's failure to articulate germane reasons for rejecting Motl's opinion, and the Ninth Circuit's *de minimis* standard, substantial evidence does not support the ALJ determination of non-severity.

## B. The ALJ improperly weighed plaintiff's testimony.

When evaluating a claimant's pain testimony where the claimant has produced objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* Thus, while the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, that cannot form the sole basis for discounting the testimony. *Id.* at 681. Unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting pain testimony associated with the underlying impairment. *Id*. "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015. Here, because the ALJ found an underlying impairment and cited no evidence of malingering, his opinion must meet this standard.

In addressing Plaintiff's testimony regarding the severity, intensity, and persistence of her symptoms, the ALJ stated only that it was "not entirely consistent with the medical evidence and other evidence." (R. at 24.) This explanation falls far short of "clear and convincing." Rarely, if ever, is a claimant's testimony "entirely consistent" with the medical evidence—nor is that the standard. Rather, the ALJ did precisely what the Ninth Circuit has instructed not to do: conclude that the severity or extent of Plaintiff's reported symptoms is not supported by the ALJ's reading of the objective medical evidence. *See Garrison*, 759 F.3d at 1014. Nevertheless, Plaintiff's subjective pain *does* find support in some of the medical evidence and other evidence in the record.

Plaintiff has had diabetes since 2001, which her providers and Dr. Kermani have categorized as "uncontrolled." Her A1C levels (a measurement of blood sugar) were at

significantly elevated levels of 9.4 and 9 during her exams with Dr. Kermani. (R. at 354, 408.) As noted above, years of physical examinations by her treatment providers repeatedly revealed hyperesthesia (abnormal sensitivity) in her feet. These same medical records suggest that the pain has progressed over time. In October 2014, Plaintiff reported that her "neuropathy seems to be getting worse." (R. at 325.) In May 2015, Plaintiff told her provider that her symptoms are "intolerable" and that it is "so bad that she cannot wear shoes or allow her sheets to lay on her feet at night." (R. at 418.) Motl later reported limited functioning due to pain that follows sitting and standing.

In his December 2014 third-party function report, Plaintiff's husband stated that Plaintiff can sit thirty minutes at a time, walk thirty minutes at a time, and must elevate her feet after sitting because it "hurts her feet to dangle." (R. at 174.) He reported that her daily activities are limited to laundry, preparing a sandwich or a frozen meal, and grocery shopping once per month. In his April 2015 report, in response to the question of what Plaintiff can no longer do due to disability, he said "stand for long periods of time or sit." (R. at 249.) He wrote that she has to rest thirty minutes after walking 200 feet. At the hearing, Plaintiff testified that she can do laundry but that her husband has to carry it back and forth for her. (R. at 49.) She testified that she had to stop working as a caretaker because it "got too painful" to be standing on her feet; that she wears her husband's slippers because shoes hurt her feet; and that she can only sit and stand for thirty minutes at a time before needing to elevate her feet. (R. at 45.)[1]

Plaintiff produced multiple forms of evidence—including medical records, function reports, and hearing testimony—attesting to the severity and persistence of her pain. The ALJ failed to provide clear and convincing reasons for rejecting these.

---

[1] Defendant greatly emphasizes that Plaintiff's providers reported normal gait. Normal gait observed during a brief appointment is, again, not mutually exclusive with pain and burning.

### C. The credit-as-true rule does not apply.

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 10.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

In this case, the ordinary remand rule applies. The evidence shows that Plaintiff suffers from an impairment that can be considered severe within the meaning of the Act and its regulations. However, because the ALJ ended the inquiry at step two, the record is underdeveloped with respect to Plaintiff's ability (or inability) to sustain work in the national economy. Accordingly, the Court remands to the ALJ to properly complete an assessment at steps three through five, including formulation of Plaintiff's RFC.

**IT IS THEREFORE ORDERED** reversing the October 16, 2017 decision of the Administrative Law Judge, (R. at 46–65), as upheld by the Appeals Council on November 29, 2017 (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with this Order.

1   **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment
2   consistent with this Order and close this case.
3   Dated this 25th day of September, 2019.

_____
Honorable John J. Tuchi
United States District Judge